# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.

**WILLIE RILEY CURRY (D-1),**

    **Defendant.**

_____/

Case No. 13-20887

HON. DENISE PAGE HOOD

# ORDER DENYING DEFENDANT WILLIE RILEY CURRY'S
# MOTION FOR JUDGMENT NOTWITHSTANDING
# THE VERDICT (JUDGMENT OF ACQUITTAL) OR FOR NEW TRIAL
# and
# GRANTING MOTION TO UNSEAL RECORD OF STATUS
# CONFERENCE

**I.    BACKGROUND**

On August 12, 2015, a jury found Defendant Willie Riley Curry guilty of the following counts as alleged in the First Superseding Indictment: Production of Child Pornography, 18 U.S.C. § 2251(a) (Counts One, Two and Three); Conspiracy to Engage in Sex Trafficking of Children, 18 U.S.C. § 1594(c) (Count Four); Sex Trafficking of Children, 18 U.S.C. §§ 1591(a) and (b) (Counts Five and Six); Attempted Sex Trafficking of Children, 18 U.S.C. §§ 1591(a) and (b), 1594(a) and 2 (Count Seven); and, Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1) (Count

Eight). (Doc. No. 153, Verdict; Doc. No. 45, Superseding Indictment)

On March 23, 2016, Curry's current counsel filed a Motion for Judgment Notwithstanding the Verdict or for New Trial of Acquittal pursuant to Fed. R. Crim. P. Rule 29 and Fed. R. Crim. P. Rule 33. The Court allowed trial counsel to withdraw on November 10, 2015 (Doc. No. 168) and current counsel was appointed to represent Curry. Current counsel and the Government agreed to extend the time to file post-verdict motions under Rules 29 and 33. (Doc. No. 171)

## II. ANALYSIS

### A. Motion for Judgment of Acquittal under Fed. R. Crim. P. 29

#### 1. Standard

Curry requests a judgment notwithstanding the verdict (judgment of acquittal) based on insufficient evidence to support the guilty verdict of the "charged offenses" under Rule 29 of the Rules of Criminal Procedure. (Motion, Doc. No. 197, Pg ID 2477) The Government responds that the motion must be denied because Curry fails to identify the elements of the offense or the offense he is challenging.

To support a motion for judgment of acquittal, the court must consider, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Caseer*, 399 F.3d 828, 839-40 (6th Cir. 2005);

2

*Jackson v. Virginia,* 443 U.S. 307, 319 (1979). A defendant claiming insufficiency of the evidence bears a heavy burden. *United States v. Jackson*, 473 F.33d 660, 669 (6th Cir. 2007). The Court is bound to make all reasonable inferences and credibility choices in support of the jury's verdict. *Id*. at 669-70. The question is merely one of legal sufficiency; the court does not substitute its judgment for that of the jury, independently weigh the evidence, or judge the credibility of trial witnesses. *United States v. Ramirez,* 635 F.3d 249, 255-56 (6th Cir. 2011). There is a strong presumption in favor of sustaining a jury conviction. *United States v. Peters,* 15 F.3d 540, 544 (6th Cir. 1994). A conviction is reversed "only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence." *United States v. Blakeney,* 942 F.2d 1001, 1010 (6th Cir. 1991).

  **2.** **Insufficient Evidence**

    **a.** **Child Pornography**

Curry does not identify which element of which count he is challenging. Curry generally asserts that "[a] rational jury could not find beyond a reasonable doubt that Defendant was guilty of the charged offenses." (Motion, Doc. No. 197, Pg ID 2477) Curry argues that the Government did not produce any pornographic photos of the three young women. Curry claims the only evidence presented were photos that the women themselves took and that they gave contradictory descriptions of what

3

occurred.

The child pornography statute at section 2251(a) punishes: "any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, ... any sexually explicit conduct for the purpose of producing any visual depiction of such conduct ..." 28 U.S.C. 2251(a). Even if a defendant did not take the actual picture, persuading, inducing, or coercing a child to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct is a violation of 2251(a). *United States v. Daniels,* 653 F.3d 399, 408 (6th Cir. 2011). The lack of direct evidence does not require that the verdict be overturned. *See United States v. Clay*, 346 F.3d 173, 176 (6th Cir. 2003). "[C]ircumstantial evidence alone can sustain a guilty verdict and that to do so, circumstantial evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Stone,* 748 F.2d 361, 362 (6th Cir. 1984).

Curry argues that although all three women testified that they were photographed, the testimony regarding the timing of when the women were photographed was an "abject failure on a critical detail" which rendered the evidence insufficient to prove Curry committed child pornography. The jury inferred from the three women's testimony that Curry used, persuaded, induced, enticed or coerced the women to engage in sexually explicit conduct for the purpose of producing visual

depiction of their conduct, which satisfied the elements to convict Curry under § 2251(a). The jury apparently found the three women's testimony credible, despite the inconsistencies in timing. The jury also found that the Government's argument that the photographs were deleted from the cell phone was credible. Curry fails to carry his heavy burden of showing that the jury's verdict on the child pornography convictions must be set aside. The totality of the evidence presented by the Government regarding the child pornography charges was sufficient to allow a rational trier of fact to infer that Curry committed child pornography.

### b. Sex Trafficking

The sex trafficking statute states, in pertinent part,

> Whoever knowingly[,] ... in or affecting interstate ... commerce, ... recruits, entices, harbors, transports, provides, or obtains by any means a person[,] ... [while] knowing ... that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided [herein].

18 U.S.C. § 1591(a).

Curry argues that the evidence does not show he coerced the women to be with him. Curry claims that the evidence established that it was the women's decision to run away from their group home and they chose to be with Curry. Curry asserts there was inconsistent testimony as to when Erica was told she would be required to be a prostitute. As to Beth, Curry asserts the only evidence of coercion was the alleged

5

beating of her with a bent broomstick and that Beth testified she had no objection to being a prostitute. Regarding the alleged rape of Olivia, Curry claims there is evidence that the rape may not have occurred because even though she testified she was screaming and yelling, no one woke up or heard the screams. Curry claims that the three women testified to varying degrees of freedom while with him, including the use of the telephone and internet.

The three women testified at trial that Curry and his co-Defendant, Tammy Pollard, set up prostitution "dates" for Erica and Beth where they performed sex acts in exchange for money. The money they made was given to Curry and Pollard. When Olivia refused to go on the "dates," she testified that Curry raped her so she would be prepared for the "dates." Olivia thereafter managed to escape from the home through a bathroom window. Tom Sweet and Mercedes Franklin, Curry's neighbors, testified that Curry told them that the women where his "whores" and "prostitutes."

Viewing the totality of the evidence at trial, Curry has not met his heavy burden of overturning the sex trafficking convictions. Despite inconsistencies in their testimonies, the jury found credible the three women's testimonies credible that they engaged in sex acts for commercial purposes. The jury also found that although the three women may have run away from their group home, Curry recruited, enticed, harbored, transported, provided or obtained by any means, the three women, knowing

they were under 18 years of age, and caused them to engage in commercial sex acts. There was sufficient evidence presented at trial to allow a rational trier of fact to infer that Curry committed sex trafficking.

After making all reasonable inferences and credibility findings by the jury to support the verdict, the Court concludes that the jury's findings of guilt as to the child pornography and sex trafficking charges were based on legally sufficient evidence and testimony at trial. The Court is not permitted to judge the credibility of the witnesses or independently weigh the evidence. The Court denies Curry's motion notwithstanding the verdict or for judgment of acquittal under Rule 29.

### B. Motion for New Trial under Fed. R. Crim. P. 33

#### 1. Standard

Alternatively, Curry seeks a new trial under Rule 33, claiming that his conviction was against the great weight of evidence presented at trial. He also claims that the testimony by the case agent violated Curry's Fifth Amendment right to remain silent.

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). When faced with a Rule 33 motion, unlike a motion for judgment of acquittal under Rule 29, the district court may weigh

the evidence and assess the credibility of the witnesses; "[i]t has often been said that [the trial judge] sits as a thirteenth juror" when considering a Rule 33 motion. *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998). A motion for new trial is premised on the argument that the jury's verdict was against the manifest weight of the evidence. *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007). Such motions are generally granted only in the extraordinary circumstance where the evidence preponderates heavily against the verdict. *Id.* at 592-93. In general, motions for a new trial are disfavored and should be granted with caution. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir.1991). The defendant bears the burden of proving that a new trial is warranted. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994).

### 2. Sufficiency of the Evidence/Witness Credibility

Viewing the evidence as a "thirteenth juror," the Court finds that the jury's verdict was not against the manifest weight of the evidence presented at trial. As noted above, there was evidence at trial from the testimony of the three then-underage women, that Curry used, persuaded, induced, enticed or coerced the women to engage in sexually explicit conduct for the purpose of producing visual depictions of their conduct, which satisfies the elements of child pornography under 18 U.S.C. § 2251(a). The three women testified that Curry, with his cell phone, took photographs of their genitalia. Even though no actual photographs were introduced as evidence at trial, the

Court finds the women's testimony credible even with the inconsistencies of their testimony raised by Curry in his motion.

Regarding the sex trafficking conviction, 18 U.S.C. § 1591(a), sitting as the "thirteenth juror," the Court also finds that the three women's testimony credible that Curry enticed, harbored, transported, provided or obtained the underage women and caused them to engage in sex acts, they termed as "dates," in exchange for money. The neighbors' testimonies supported the three women's testimonies that they were Curry's "hoes" and "prostitutes." Sweet testified that Curry told Sweet the three women were his "whores." Franklin testified that Curry also told her the three women were his "hoes" and "prostitutes." The jury's verdict on the sex trafficking conviction was not against the great weight of evidence presented at trial.

### 3. Agent's Testimony

Curry argues that he is entitled to a new trial because the case agent's testimony regarding contact with law enforcement and requesting an attorney were inappropriate. The Government responds that the statements were isolated and were not prejudicial. The Government asserts that the Court's curative instructions following the agent's responses were sufficient.

A court may vacate any judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The "interest of justice" standard in Rule 33

allows the grant of a new trial where substantial legal error has occurred. *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). "[W]here deliberately injected testimony concerning unrelated offenses prejudices the defendant, we will not hesitate to reverse verdicts that may have been reached because of the potential influence of such statements." *United States v. Forrest,* 17 F.3d 916, 921 (6th Cir. 1994). If a trial judge strikes the statement from the record and provides a curative instruction, and ample evidence of the defendant's guilt exists, the statement is not unfairly prejudicial. *Id.* Courts may cure an error of allowing inappropriate testimony by subsequently striking the statement and giving a cautionary instruction to the jury. *United States v. Greene,* 400 F.2d 847, 848 (6th Cir. 1968). It is presumed that the jury follows a court's instructions on the law. *Washington v. Hofbauer,* 228 F.3d 689, 706 (6th Cir. 2000).

At trial, the case agent, Amy Mentzel, testified on direct on how she became involved in the case and her investigation of the missing juveniles. (Tr. 187, Pg ID 2220-21) She testified that on August 19, 2015, a member of the Task Force received information that a young lady who was in Detroit had run away from a house where she had been held. (Tr. 187, Pg ID 2220) Agent Mentzel immediately went to the address to set up surveillance because there was a concern that the juvenile would be moved. (Tr. 187, Pg ID 2221) Agent Mentzel and other members of the Task Force

knocked on the door of the home and Tom Sweet answered the door. (Tr. 187, Pg ID 2223) Sweet allowed the Task Force Officers to look for the two missing individuals at the home. The young women were not found at the location. (Tr. 187, Pg ID 2224) Sweet informed the Task Force that the two juveniles were associated with someone he knew as "Slim" and he provided them with Slim's telephone number *Id.* Agent Mentzel testified that her partner was receiving a call from the state police at that time who had been at another address a few days earlier looking for the same missing individuals. *Id.* The state police provided them with the Warwick Street address. *Id.* Agent Mentzel indicated the Warwick address was a few blocks from Sweet's home on Westwood. *Id.*

Agent Mentzel, her partner and another officer went to the Warwick address where co-Defendant Pollard answered the door. (Tr. 187, Pg ID 2225) They asked Pollard about the missing individuals and she told them they were in the house. *Id.* Agent Mentzel brought Erica and Beth to the same room and confirmed their identities. (Tr. 187, Pg ID 2226) Erica and Beth were thereafter interviewed by the agents where, among other things, they indicated that they were photographed with a cell phone while naked. (Tr. 187, Pg ID 2241)

A search warrant was issued for the telephone carrier to provide whatever content information was received. (Tr. 187, Pg ID 2242) Agent Mentzel also prepared

search warrants for the Warwick home and the cell tower information for Curry's telephone number. (Tr. 187, Pg ID 2243) When asked why, she responded, "[a]t this point I knew that the Defendant would have a lot of interaction with law enforcement prior to me becoming involved in the case–" *Id.* Defense counsel objected to the response. The Court thereafter excused the jury for the day since it was late Friday afternoon.

Agent Mentzel testified on Monday that she obtained a search warrant for the Warwick address in August 2013 because she knew there had been "at least six MSP phones there," that there were six marked Michigan state police cars at the address on August 15th. (Tr. 188, Pg ID 2261-62) On August 19th, the day Erica and Beth were recovered from the Warwick house, Curry was not home. (Tr. 188, Pg ID 2262) Agent Mentzel wanted to recover Curry's cell phone for evidence of any photographs on the phone. *Id.* Agent Mentzel preserved the number she believed was Curry's number and sought a search warrant for the cell tower location information for Curry's phone number. (Tr. 188, Pg ID 2262-63)

Trial resumed on August 10, 2015 at which time the Court gave the following instruction to the jury:

> And you will all recall at the end of the day on Friday, there was an objection to a statement about there being a lot of police contact, and we had a later separate record of it, and I sustained the objection because it sounded like you

12

> could have inferred something other than what this testimony is going to be from that, and so that question and answer is stricken. I'm sorry, now you may go back to your question.

(Tr. 188, Pg ID 2261)

Curry argues that Agent Mentzel's reference to law enforcement contact was inappropriate and that the verdict should be reversed. The Court's review of its curative instruction and the context of Agent Mentzel's testimony shows that the reason for the request of the cell tower information and the presence of law enforcement was to establish that the state police were at the Warwick address looking for the women. The law enforcement contact testimony was not to show Curry had a prior criminal history with law enforcement. The Court finds Agent Mentzel's testimony regarding law enforcement contact was not prejudicial to Curry and, if prejudicial, was cured by the Court's instruction.

The other testimony at issue was Agent Mentzel's testimony involving the arrest of Curry. Agent Mentzel indicated that Curry was arrested on October 23, 2013. (Tr. 188, Pg ID 2264) Curry initially agreed to speak to her and gave her some background information. *Id.* When asked if Curry made any statements about the three women who stayed at his home, Agent Mentzel testified, "No, he asked for some – an attorney." *Id.* Defense counsel objected and the Court sustained the objection instructing "the jury will disregard it." *Id.*

No mention of Curry's request for counsel was thereafter made at trial. It is presumed that the jury followed the Court's instruction to disregard Agent Mentzel's statement. The testimony was isolated and Curry has not shown that the Government acted in bad faith or deliberately injected the comment to the proceedings. Curry has not carried his burden to show that this isolated comment was prejudicial or was a significant part of Agent Mentzel's testimony.

The Court finds that Curry is not entitled to a new trial because of Agent Mentzel's testimony regarding law enforcement present at the Warwick address or the isolated comment regarding Curry's request for an attorney. Curry's motion for new trial is denied because the interest of justice does not so require.

## III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant Willie Riley Curry's Motion for Judgment Notwithstanding the Verdict (Judgment of Acquittal) pursuant to Fed. R. Crim. P. 29, and, for Motion for New Trial pursuant to Fed. R. Crim. P. 33 **(Doc. No. 197)** is DENIED.

IT IS FURTHER ORDERED that the Motion to Unseal Status Conference **(Doc. No. 198)** is GRANTED.

     S/Denise Page Hood
     Denise Page Hood
     Chief Judge, United States District Court

Dated: September 7, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 7, 2016, by electronic and/or ordinary mail.

     S/LaShawn R. Saulsberry
     Case Manager