# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,           CRIMINAL CASE NO. 13-20887
                              CIVIL CASE NO. 19-12737
v.                        HONORABLE DENISE PAGE HOOD

D-1 WILLIE RILEY CURRY,

      Defendant.
_____/

## ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
## TO VACATE, SET ASIDE, OR CORRECT SENTENCE [#256];
## ORDER DISMISSING CIVIL CASE NO. 19-12737; and
## ORDER DENYING CERTIFICATE OF APPEALABILITY

On August 12, 2015, a jury convicted Defendant of numerous counts related to the production of child pornography and sex trafficking of minors and one count of felon in possession of a firearm. ECF No. 153. After the Court imposed a sentence of 10-35 years on each count, with all counts to be served concurrently, ECF No. 224, Defendant filed a timely appeal of his conviction and sentence. The Sixth Circuit Court of Appeals denied Defendant's appeal in its entirety. Defendant filed a petition for a writ of certiorari with the United States Supreme Court but that petition was denied on October 10, 2018.

On or about September 18, 2019, Defendant timely filed the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (the "2255

Motion"). ECF No. 256.  Defendant then filed a motion for leave to supplement his 2255 Motion, which was granted by the Court. *See* ECF Nos. 262, 264. The Government filed a response, and Defendant filed a reply and several supplemental filings. *See* ECF Nos. 265, 267, 268, 270, 271, 272, 273, and 274.[1]  The Court has reviewed and considered all of the filings noted above.   The Court denies Defendant's 2255 Motion for the reasons set forth below.

## I.    BACKGROUND

The Sixth Circuit Court of Appeals framed the facts of this case as follows:

> On August 3, 2013, three minor girls with the initials E.P. (age 15), E.C. (age 16), and O.H. (age 16) ran away from the group home where they were living in Mt. Pleasant, Michigan. The girls happened upon defendant as he was fishing nearby, and requested a ride to Grand Rapids, Michigan. The girls told defendant how old they were, and that they had run away from a group home. Defendant told the girls that Grand Rapids was too far, but he offered to give them a ride to Detroit the next day. The girls spent the night in Mt. Pleasant at the home of a friend of defendant's, where they met defendant's girlfriend, Tammy Pollard.

> Defendant told the girls that if they would come to Detroit he would take care of them, promising money, phones, jobs, and drugs. The following day Pollard and defendant took the girls to their home on Warwick Street, in Detroit. Though defendant told the girls they would be cooking and cleaning, and could otherwise do what they want, once they arrived in Detroit he informed them they would be going on dates with men for money, and he would be their pimp. O.H.

---

[1] The document filed at ECF No. 267 is a Motion to Expand the Record, which the Court hereby GRANTS.  The document at ECF No. 274 is a Motion for Leave to Supplement the 2255 Motion, which the Court also GRANTS.

in particular was distressed by this and asked to go home, but defendant informed them that they were his until they turned eighteen. Defendant used his cell phone to take sexually explicit photos of the girls, which he sent by text message to entice potential customers to pay for sex with the girls.

Over the next several days, defendant physically and sexually assaulted all three girls and forced E.P. and E.C. to have sex with others for money. Defendant raped O.H. and tried unsuccessfully to force her to have sex with others. Detailed accounts of defendant's actions were proved at trial, but they are not germane to the appeal so we will not recount them here.  On August 15, 2013, O.H escaped from the house on Warwick Street through a bathroom window and made her way to a gas station, where a woman took her to meet her father. Her father then took O.H. to the Michigan State Police (MSP) to tell her story. With O.H. on the loose, defendant temporarily moved the other two girls to the home of Thomas Sweet, an acquaintance and apparently a narcotics customer of defendant's. The MSP went to defendant's home on Warwick Street the same day, but did not find E.C. or E.P. at the house. Sometime while the two girls stayed at Sweet's house, Sweet permitted E.P. to contact her mother using his cell phone.

On August 19, 2013, the Southeastern Michigan Crimes Against Children Task Force (SEMCAC), whose membership includes the Federal Bureau of Investigation, the MSP, and other local law enforcement agencies, received information about the girls' being held against their will and forced into prostitution. The same day, law enforcement officers from SEMCAC interviewed Sweet, who confirmed that the two girls had stayed at his house for several days and had used his phone. Sweet confirmed that the girls were acquainted with defendant. SEMCAC members returned to the house on Warwick Street, where Pollard invited them into the house and confirmed that the girls had been living there. The SEMCAC members removed the girls and took them to the MSP station to be interviewed.

On October 23, 2013, a search warrant was executed at the

3

Warwick Street house, where defendant and Pollard were arrested without incident. The search turned up a firearm and ammunition, two cellular telephones, a computer, two broom handles, and a mop handle. One of the broom handles was later identified as the one defendant used to beat one of the girls. Forensic identification of one of the telephones turned up fifteen deleted images and text messages offering the girls up for prostitution.

After a ten-day trial, the jury convicted defendant on all counts: three counts of Production of Child Pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e), one count of Conspiracy to Engage in Sex Trafficking of Children in violation of 18 U.S.C. §§ 1594(c) and 1591(a), two counts of Sex Trafficking of Children in violation of 18 U.S.C. §§ 1591(a) and 1591(b)(1), one count of Attempted Sex Trafficking of Children in violation of 18 U.S.C. §§ 1594(a), 1591(a), and 1591(b)(1), and one count of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1).

ECF No. 243, PgID 3435-37 (*United States v. Curry*, No. 16-2366 (6th Cir. Feb. 6, 2018)). The Court imposed a sentence of 20 years on Counts One, Two, and Three; 35 years on Counts Four, Five, Six, and Seven; and 10 years on Count Eight, all to be served concurrently. ECF No. 224.

In his 2255 Motion, Defendant makes the following 10 arguments:

1. Counsel was ineffective for failing to move to dismiss the indictment (ECF No. 256, PgID 3584-3601);

2. Counsel was ineffective for failing to challenge the constitutionality of the statutes charged (*Id.*, PgID 3601-04);

3. Counsel was ineffective for failing to argue that the criminal statutes at issue were unconstitutionally vague (*Id.*, PgID 3605-11);

4. The recent Supreme Court case of *Rehaif* requires the Court to vacate

4

Curry's felon in possession conviction (*Id.*, PgID 3611-19);

5.  Counsel was ineffective for failing to call witnesses (*Id.*, PgID 3619-21);

6.  Counsel was ineffective for failing to raise grand jury issue (*Id.*, PgID 3622-24);

7.  Counsel was ineffective for failing to move to suppress evidence seized in violation of Carpenter (*Id.*, PgID 3625-36);

8.  The recent Supreme Court case of *Haymond* requires the Court to vacate Curry's term of supervised release (*Id.*, PgID 3636-37);

9.  Counsel was ineffective for failing to procure a cell phone expert (*Id.*, PgID 3638-39);

10.  Counsel was ineffective for failing to challenge sentencing enhancements (*Id.*, PgID 3640-43).

Defendant subsequently moved for, and was granted, the right to submit an additional claim that counsel was ineffective for failing to make a "unit of prosecution" argument that at least counts two and three should be dismissed.

## II.   LEGAL STANDARDS

### A.   28 U.S.C. § 2255

28 U.S.C. § 2255 authorizes a federal prisoner to move the district court to vacate a sentence. 28 U.S.C. § 2255(a).  A defendant seeking relief under § 2255 "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside statutory limits; or (3) an error of fact or law that was so

fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). When raising claims alleging errors of constitutional magnitude, a defendant must show that the constitutional error had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). Further, relief under § 2255 requires a showing of "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. U. S.*, 417 U.S. 333, 346 (1974).

### B.   Ineffective Assistance of Counsel Claims

Under the Sixth Amendment, a defendant has a right to "have the assistance of counsel for his defense."  U.S. Const. Amend. VI.  A defendant under the Sixth Amendment has a right to "reasonably effective assistance of counsel."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   In *Strickland*, the Supreme Court articulated a two-prong test for ineffective counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction .

. . resulted from a breakdown of the adversary process that renders the result unreliable.

*Id.* "There is a strong presumption that legal counsel is competent," *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989), and "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A "reviewing court must give a highly deferential scrutiny to counsel's performance." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). Further, "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

An attorney is not deficient for failing to argue a frivolous claim. *See, e.g., Krist v. Foltz*, 804 F.2d 944, 946 (6th Cir. 1986) ("An attorney is not required to present a baseless defense or to create one that does not exist.").

## III.   ANALYSIS OF DEFENDANT'S § 2255 MOTION

## A.   Ineffective Assistance of Counsel

Nine of Defendant's claims are based on ineffective assistance of counsel.

1.    *Failure to Move to Dismiss the Indictment*

Defendant argues that the Indictment subjected him to double jeopardy because he was charged with three identical counts for each of these two crimes: (a) production of child pornography; and (b) sex trafficking.   The Fifth Amendment protects and prevents persons from being prosecuted twice for the same offense. *See* U.S. CONST. AMEND. V (no person shall "be subject for the same offence to be twice put in jeopardy of life or limb"); *Jones v. Harry*, 405 F. App'x 23, 28 (6th Cir. 2010) (quoting *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (the "clause protects criminal defendants from prosecution following conviction or acquittal for the same offense, and also prohibits infliction of 'multiple punishments for the same offense imposed in a single proceeding.'")).   Defendant was charged with three child pornography offenses and three sex trafficking offenses because there were three victims of each crime.   Accordingly, the Government had the right to file a separate child pornography charge and a separate sex trafficking charge against Defendant for each of the three victims.   As this argument lacked any merit, Defendant's counsel was not ineffective for failing to raise it.

2.    *Challenge to the Constitutionality of the Sex Trafficking Statute*

Defendant asserts that it was unconstitutional for him to be charged and

convicted under a statute that did not require proof that he knew his conduct affected interstate or foreign commerce.  This argument is baseless, as the Sixth Circuit has determined that "the government is not required to prove that the defendant knew that channels of interstate commerce would be utilized . . . rather that fact in the statute is 'jurisdictional.'" *See United States v. Chambers*, 441 F.3d 438, 450 (6th Cir. 2006). *See also United States v. Feola*, 420 U.S. 671, 676-77 (1975) (the interstate commerce element "need not be in the mind of the actor at the time he perpetrates the act made criminal by the federal statute").  Defendant's counsel was not ineffective for failing to make this argument.

### 3. *Criminal Statutes at Issue were Unconstitutionally Vague*

Defendant argues that, in each count of the Indictment, there are elements that lack a scienter requirement at the start of each element. Citing *Rehaif v. United States*, 139 S.Ct. 2191 (2019); *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009).  Defendant contends that the absence of such a *mens rea* element renders the statutes, in particular the sex trafficking and felon in possession charges, unconstitutionally vague.  Defendant asserts that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed," *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964), nor may a statute be so broad and unconstrained as to "encourage arbitrary and discriminatory

enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Also citing *Johnson v. United States*, 135 S.Ct. 2251 (2015); *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018); *United States v. Davis*, 139 S.Ct. 2191 (2019) (cited collectively for the proposition that a "crime of violence" is too vague to withstand constitutional scrutiny).

Defendant argues that, "[e]ven in the Court's instructions to the jury[,] it does not inform the jury that the knowledge element is required for each elment. To expect a jury with no training in the law, to understand what a state-of-mind is, offers no solution to the answer of whether [Defendant] would be found guilty if they actually did understand what a scienter was, or is. That was the case when the jury could not . . . determine for itself whether [Defendant]'s actions violated the commerce clause." ECF No. 256, PgID 3610-11. Defendant contends that: (a) his trial counsel should have demanded a scienter instruction on each and every element and count; and (b) the fact that his counsel did not do so rendered his counsel ineffective.

The Court is not persuaded that the jury instructions or the scienter requirements were unconstitutionally vague, broad or unconstrained, such that they encouraged arbitrary and discriminatory enforcement. The jury instructions in this case identified the need for Defendant's knowledge with respect to every count.

*See, e.g.*, ECF No. 241, PgID 3385-85 (Counts One, Two, and Three), 3391-92 (Count Four), 3393 (Counts Five, Six, and Seven), 3400 (Count Eight, felon in possession charge). The jury instructions read to the jury (copies of which were provided to the jurors for consultation in their deliberations) also included a definition of "knowingly." *See* ECF No. 241, PgID 3402 ("The term 'knowingly' means voluntarily and intentionally and not because of mistake or accident.").

The Court notes that, for each of the eight counts, the language utilized in the instructions was taken from and/or consistent with the Sixth Circuit Pattern Criminal Jury Instructions and have been upheld on appellate review on many occasions. The Sixth Circuit also had occasion to review the instructions and upheld them on appeal in this case. For all of these reasons, the Court finds that Defendant's counsel was not ineffective by choosing not to argue that the statutes (or instructions) were unconstitutionally vague.

4. *Failure to Call Witnesses*

Defendant asserts that his counsel should have called Tammy Chamberlain and Lyndon Harper as witnesses at trial, but Defendant does not provide an affidavit from either person or indicate what either of those proposed witnesses would have stated. In the absence of knowing the substance of any testimony those witnesses would have given, the Court must conclude that it was within the

11

discretion of trial counsel whether to call Tammy Chamberlain and/or Lyndon Harper as a witness at trial. *See, e.g., Sumatar v. Clarridge*, 225 F. App'x 366, 372 (6th Cir. 2007) (whether to call a witness is "generally a matter of trial strategy and, absent a showing of prejudice, the failure to call a witness does not deprive a defendant of effective assistance of counsel"); *Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).  Defendant has not set forth any substantial defense those witnesses would have afforded him, nor has he shown how he was prejudiced by the absence of their testimony.  Accordingly, the Court rejects Defendant's claim that the failure to call Tammy Chamberlain and Lyndon Harper constituted ineffective assistance of counsel.

### 5. *Failing to Raise Grand Jury Issue*

Defendant argues that the grand jury transcripts reveal that the Government did not have any photos of the three victims (including on his cellular phone) and rested its arguments on the fact that he is a black man.  Defendant contends that any competent lawyer would have reviewed the grand jury transcripts and understood that the Government would be trying this case based on Defendant's race, including calling him a pimp.  Defendant claims he has never been involved in pimping, so the Government must have taken the position that all black men are pimps.  Defendant also suggests that his attorneys "were ineffective for failing to

challenge the chain-of-custody, and failing to properly cross-examine a witness regarding the evidence collected."

Defendant does not cite any authority in support of any of these arguments, none of which the Court finds to be legally cognizable. To the extent there is any cognizable claim, the Court finds that whether to raise an argument was within the discretion of trial counsel. *See generally Strickland*, 466 U.S. at 689; *Ward*, 995 F.2d at 1321. *See also Dell v. Straub*, 194 F.Supp.2d 629, 651 (E.D. Mich. 2002) (citing *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir.1997) ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."); *Cardwell v. Netherland*, 971 F.Supp. 997, 1019 (E.D.Va.1997) ("Where trial counsel conducts a thorough and meaningful cross-examination of a witness, counsel's failure to employ a trial strategy that, in hindsight, might have been more effective does not constitute unreasonable performance for purposes of an ineffective assistance of counsel claim")); *United States v. Singleton*, No. 5:13-CR-8-KKC-REW, 2018 WL 5075982, at *26 (E.D. Ky. Mar. 20, 2018), report and recommendation adopted, No. CR 5:13-08-KKC, 2018 WL 8949240 (E.D. Ky. Oct. 17, 2018). In *Singleton*, the court stated:

> "Physical evidence is admissible when the possibilities of misidentification or alteration are eliminated, not absolutely, but as a

matter of reasonable probability. Merely raising the possibility of tampering is insufficient to render evidence inadmissible. Where there is no evidence indicating that tampering with the exhibits occurred, courts presume public officers have discharged their duties properly. Absent a clear abuse of discretion, challenges to the chain of custody go to the weight of the evidence, not its admissibility." *United States v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997) (internal quotation marks and citations removed). All evidence here had a valid sponsor and custodial basis. Singleton's nitpicking is ineffectual.

At bottom, this claim "falters on the prejudice prong of Strickland." *Cowens v. Bagley*, 639 F.3d 241, 252 (6th Cir. 2011). Quite simply, "[n]o precedent establishes that defense counsel must challenge the chain of custody ... or risk falling below the minimum requirements of the Sixth Amendment." *Id*. Here, Singleton "has not provided any evidence that ... raises a question about whether the [at-issue evidence] in fact ever left the [Government]'s custody," failing his obligation to prove Strickland prejudice. Singleton's bare assertions are not "evidence that the chain of custody was in fact assailable," leading to no § 2255 relief. *See, e.g., Grant v. McCall*, No. 2:12-2859-CMC-BHH, 2013 WL 4041958, at *8 (D.S.C. Aug. 8, 2013). Singleton "merely raises the possibility that someone tampered with the evidence; he points to no evidence showing that alteration actually occurred." *Allen*, 106 F.3d at 700. Movant thus establishes no ineffectiveness here.

*Id.* As in *Singleton*, Defendant has not provided any evidence disproving a valid chain of custody. And, even if any of these arguments should have been raised, Defendant has not shown that he was prejudiced by counsel's failure to do so. Accordingly, the Court denies this claim.

6.      *Failure to Move to Suppress Evidence Pursuant to* Carpenter

Defendant argues that the Government failed to obtain a search warrant

14

before acquiring location information from Defendant's cell phone, in violation of *Carpenter v. United States*, 138 S.Ct. 2206 (2018).  The failure to file a motion to suppress is not, in itself, ineffective assistance of counsel, as a defendant must also demonstrate that the counsel's failure fell below the objective standard of reasonableness, and "must also prove that his [suppression] claim is meritorious." *Kimmelman v. Morrison*, 477 U.S. 365, 374-75 (1986).

In this case, a Government's trial witness testified that he had obtained a search warrant to determine location information on Defendant's cell phone. *See* ECF No. 187, PgID 2243 ("Yes. I also wrote a search warrant for cell tower information location for that particular phone."); ECF No. 188, PgID 2263 ("Q: So you obtained a search warrant for location information about that particular phone? A: Yes.").  Based on that testimony (and the existence of a search warrant), Defendant's counsel reasonably exercised discretion not to file a motion to suppress the location information obtained by the Government.  The Court also notes that *Carpenter* was not decided until June 22, 2018, nearly three years <u>after</u> Defendant's counsel filed a motion to dismiss, ECF No. 104 (June 15, 2015), and Defendant's trial concluded (August 12, 2015).

The Court finds that Defendant's counsel was not ineffective because counsel did not file a motion to suppress on the premise set forth in *Carpenter*.

15

7.     *Failure to Procure a Cell Phone Expert*

Defendant asserts that his counsel should have called an expert to testify that a cell phone causes images to be imprinted in the phone ("caches").  Defendant suggests that, if his counsel had secured an expert, Defendant: (a) could have established that Defendant did not have photos of the victims on his cell phone; and (b) would have been acquitted on at least Counts One, Two, and Three.

As set forth above, whether to call a witness is "generally a matter of trial strategy and, absent a showing of prejudice, the failure to call a witness does not deprive a defendant of effective assistance of counsel." *Sumatar*, 225 F. App'x at 372; *Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). *See also English v. Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010) ("The focus in failure-to-investigate claims . . . is the reasonableness of [counsel's] investigation (or lack thereof).").

At trial, the Government's expert witness, Wade Higgason (a computer forensic expert), actually testified that pictures (including those of child pornography) cannot be recovered from a cell phone if they were deleted and overwritten. *See* ECF No. 187, PgID 2203.  This seems to be the type of information that Defendant now asserts would have aided him.  Defendant's

16

counsel also vigorously cross-examined the Government's other witnesses.

The Court finds that Defendant's counsel was not objectively unreasonable under *Strickland* for failing to obtain an expert when "trial counsel reasonably chose to rely upon cross-examination of the [Government]'s own witnesses to establish [Defendant's] case." *Smith v. Angelone*, 111 F.3d 1126, 1131 (4th Cir.1997).   The Court also concludes that, based on the evidence presented at trial, Defendant was not prejudiced by the failure of Defendant's counsel to secure a cell phone expert.  The Court denies Defendant's claim.

8.     *Failure to Challenge Sentencing Enhancements*

Defendant argues that his counsel failed to undertake the research necessary to achieve competent representation with respect to his sentencing, resulting in prejudice to his sentence.  Although Defendant contends that enhancements to his sentence that "vaulted [his] ultimate sentence should have been charged and proved[d] to the jury,"  Defendant does not identify the enhancements he believes should have been challenged.  The Court also notes that, for purposes of a 2255 motion, a defendant can only succeed on claims of a constitutional nature with respect to sentencing challenges.  *Grant v. United States*, 72 F.3d 503, 505-06 (6th Cir. 1996). Defendant does not indicate the appropriate Guideline range, what sentence he should have received, the constitutional nature of his sentence

challenge, or how the Court erred.   Accordingly, the Court has no basis upon which to grant the relief Defendant seeks and denies his claim.

9.     *Failure to Make a "Unit of Prosecution" Argument*

Defendant challenges his convictions on the three counts of production of child pornography (in Counts One, Two, and Three).   Defendant contends that those three counts constitute a "unit of prosecution" because they are identical claims. Citing *United States v. Elliot*, 937 F.3d 1310 (10th Cir. 2019), *cert. denied*, No. 19-7622, 2020 WL 1124523 (U.S. Mar. 9, 2020).   Defendant states that all of the dates on those three counts are identical, so there was only one unit of prosecution, such that his rights under the Double Jeopardy Clause are plainly violated.   Defendant argues that, had his counsel made this argument, the Court would have dismissed at least Counts Two and Three.   The Court does not agree with Defendant's contention that the rule in *Elliot* applies in this case.

In *Elliot*, the key facts were:

Execution of a search warrant on Elliott's residence on July 24, 2013, uncovered over 8,000 images of child pornography, including videos of Elliott sexually assaulting three different children, on five different devices. A federal grand jury returned an eight-count indictment against Elliott, charging him with three counts of producing child pornography and five counts of possessing child pornography. A superseding indictment charged that Elliott possessed five separate storage devices containing child pornography: an iPhone, a digital hard drive, a Hewlett Packard desktop computer, an eMachines desktop computer, and a Dropbox storage account. Each count alleged

18

that Elliott possessed these devices "[o]n or about July 24, 2013, in Luna County, in the District of New Mexico."

*Elliott*, 937 F.3d at 1312 (footnote omitted).  Elliot moved to dismiss all but one of the possession counts, claiming that the counts were multiplicitous.

The *Elliot* court reasoned that "[i]t seems implausible that Congress could have intended to punish an individual who possesses five images of child pornography on five different devices five times more severely [than] an individual who possesses the same five images on one device. Thus having exhausted the tools of statutory construction, we are left with grievous doubt as to the proper unit of prosecution and therefore conclude the rule of lenity applies." *Elliott*, 937 F.3d at 1315 (footnotes omitted).  Accordingly, that court "conclude[d] that the four counts of possession on which Elliott was convicted are multiplicitous. The appropriate remedy is vacatur of all but one of those convictions and resulting sentences." *Id.* at 1316.

As the facts and the *Elliot* court's statements make clear, the reason for treating the five charges as one unit of prosecution was that each charge was based on the same images, just on five separate devices possessed by the defendant.  In this case, however, each charge stems from Defendant's production of child pornography of three separate minor victims.  Count One is based on Defendant's production of the visual depiction of Minor Victim One engaged in sexually

19

explicit conduct.  Count Two is based on Defendant's production of the visual depiction of Minor Victim Two engaged in sexually explicit conduct.  Count Three is based on Defendant's production of the visual depiction of Minor Victim Three engaged in sexually explicit conduct.

Unlike in *Elliot*, Defendant was not prosecuted and punished repeatedly for the identical images.  In this case, there are no overlapping images in Counts One, Two, and Three.  There were three separate victims, and much like a defendant who is accused of robbing three different banks, it is reasonable and appropriate for the Government to charge three different crimes without implicating Defendant's constitutional and double jeopardy rights.  Defendant's counsel was not ineffective for failure to make an "*Elliot*"-style argument before this Court or on appeal.

**B.    *Rehaif* Does Not Support Vacating the Felon in Possession Conviction**

Defendant argues that, because he did not know – and the Government did not prove – that Defendant was not permitted to own a firearm, he could not be guilty of the felon in possession of a firearm charge in Count Eight.  Defendant relies on the United States Supreme Court's recent decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019), and the Fourth Circuit's ruling in *United States v. Gary*, 954 F.3d 194, 202-03 (4th Cir 2020).  In *Rehaif*, the Supreme Court held

20

that, in order to secure a § 922 felon in possession of a firearm conviction, the Government must prove that a defendant knew he: (a) possessed the firearm; and (b) belonged to the relevant category of restricted persons.  For a defendant going to trial on felon in possession charges post-*Rehaif*, the Government must prove the defendant knew he "belonged to the relevant category of persons barred from possessing a firearm" when he possessed it. *Id.* at 2194, 2200.

In this case, decided years before *Rehaif* and *Gary*, there was not a burden on the Government to prove that Defendant knew he was in a relevant category of restricted persons.   At trial on August 7, 2015, Defendant and his counsel stipulated to Exhibit 41, which was admitted.  The substance of Exhibit 41 is:

> The document is entitled, Stipulation and Agreement regarding Defendant's Prior Felony Conviction, and it states, it is agreed and stipulated between the undersigned Counsel for the Government and the undersigned Counsel for Defendant, with Defendant's expressed consent, that prior to October 23rd, 2013, Defendant Willie Curry had been convicted of a felony; that is, a crime with a possible punishment of more than one year in prison, knew that he had been convicted of a felony, and had not had his conviction expunged nor his rights restored, and that the Government can call at least one witness who can testify as to this fact. Signed for the United States by Sara D. Woodward, Assistant U.S. Attorney, for Defendant by David Steingold, attorney for Defendant, and by Willie Curry, the Defendant, dated August 7th of 2015.

ECF No. 187, PgID 2218.

It also is undisputed that, prior to October 23, 2013, Defendant was

convicted on charges of felony firearm and felon in possession of a firearm. *See* Presentence Investigation Report at ¶¶ 97, 100.  As Defendant previously had been convicted of being a felon in possession of a firearm, the Court finds that a reasonable jury could infer that Defendant was aware on October 23, 2013 that he was prohibited from possessing a firearm because of his status as a felon.  For these reasons, even if the Government was required to prove that Defendant knew he was in a relevant category of restricted persons, it could and would have done so beyond a reasonable doubt.  For that reason, Defendant was not prejudiced even if *Elliot* governed this case.[2] *See also Schlup v. Delo*, 513 U.S. 298, 327-28 (1995) (a defendant must show that it is "more likely than not that no reasonable juror would have convicted him" if the court had instructed the jury as the defendant wished and the government had the opportunity to produce evidence of the admitted element).

## C.    Effect of *Haymond* on Term of Supervised Release

Defendant argues that, pursuant to the Supreme Court's decision in *United States v. Haymond*, 139 S.Ct. 2369 (2019), the Court should vacate his sentences

---

[2]Defendant does not argue that his counsel was ineffective for failing to make a *Rehaif*-style argument, but the Court finds that such an argument was not necessary at the time of Defendant's trial because his counsel did not have to "anticipate a[n] . . . appellate court's willingness to reconsider a prior holding or . . . the likelihood that a federal habeas court will repudiate an established . . . rule." *Smith v. Murray*, 477 U.S. 527, 536 (1986).

under 18 U.S.C. § 3583(k), apparently because he believes his term of supervised release will operate as a new criminal offense for which he has not been convicted by a jury.  The Court finds Defendant's reliance on *Haymond* is erroneous as it relates to his sentence.  The court in *Haymond* did not consider the constitutionality of the term of supervised release imposed at the sentencing after conviction of the charges in the indictment; rather, that court considered a new sentence after the defendant violated his supervised release conditions after completing his term of imprisonment.

> Because Mr. Haymond had no criminal history . . . , the judge concluded that Mr. Haymond was "not going to get much out of being in prison" and sentenced him to a prison term of 38 months, followed by 10 years of supervised release. After completing his prison sentence, however, Mr. Haymond encountered trouble on supervised release. . . . [W]hen the government conducted an unannounced search of his computers and cellphone, it turned up 59 images that appeared to be child pornography. Based on that discovery, the government sought to revoke Mr. Haymond's supervised release and secure a new and additional prison sentence.

> A hearing followed before a district judge acting without a jury, and under a preponderance of the evidence rather than a reasonable doubt standard. . . . the judge found it more likely than not that Mr. Haymond knowingly downloaded and possessed the remaining 13 images.

> With that, the question turned once more to sentencing.  Under 18 U.S.C. § 3583(e)(3), . . . the judge in this case would have been free to sentence Mr. Haymond to between zero and two additional years in prison.

> But there was a complication. Under § 3583(k), added to the Act in 2003 and amended in 2006, if a judge finds by a preponderance of the evidence that a defendant on supervised release committed one of several enumerated offenses, including the possession of child pornography, the judge must impose an additional prison term of at least five years and up to life without regard to the length of the prison term authorized for the defendant's initial crime of conviction. Because Mr. Haymond had committed an offense covered by § 3583(k), the judge felt bound to impose an additional prison term of at least five years. He did so, though, with reservations.

*Haymond*, 139 S. Ct. at 2373-75. In finding the new sentence unconstitutional, the Supreme Court stated,

> Yet in this case a congressional statute compelled a federal judge to send a man to prison for a minimum of five years without empaneling a jury of his peers or requiring the government to prove his guilt beyond a reasonable doubt. As applied here, we do not hesitate to hold that the statute violates the Fifth and Sixth Amendments.

*Haymond*, 139 S. Ct. at 2373.

Defendant has not finished serving the term of imprisonment based on his conviction of the charges in the indictment and has not commenced his period of supervised release. Accordingly, the Court finds that *Haymond* is inapplicable and denies Defendant's claim based on *Haymond*.

## V.    CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.  In order to obtain a certificate of appealability, a

defendant "must make a substantial showing of the denial of a constitutional right." *Slack v. Daniel*, 529 U.S. 473, 483 (2000); 28 U.S.C. § 2253(c)(2).   To demonstrate this denial, the defendant is required to show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further." *Slack,* 529 U.S. at 483-84 (citation and internal quotations omitted).   In other words, when a district court rejects a defendant's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability,* 106 F.3d 1306, 1307 (6th Cir. 1997).

The Court concludes that, with respect to each of the grounds asserted in his 2255 motion, Defendant has not shown (and cannot show) that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further." *Slack,* 529 U.S. at 483-84 (citation and

internal quotations omitted).  For the reasons stated above, the Court finds that the issues raised by Defendant are without merit, and it will not issue Defendant a certificate of appealability.

## VI.  CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Criminal Case No. 13-20887, ECF No. 256, filed on September 18, 2019] is **DENIED.**

IT IS FURTHER ORDERED that Defendant's Motion to Expand the Record [ECF No. 267] is **GRANTED**.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to Supplement the 2255 Motion [ECF No. 274] is **GRANTED**.

IT IS FURTHER ORDERED that the Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Civil Case No. 19-12737] is **DISMISSED WITH PREJUDICE and designated as CLOSED.**

IT IS FURTHER ORDERED that a certificate of appealability not issue in this case.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: May 19, 2020